*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 16, 2026
9:36 AM

Plaintiff-Appellee,

v

No. 373905
Oakland Circuit Court
LC No. 2023-284956-FC

ANTHONY JOSEPH ROSS III,

Defendant-Appellant.

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of armed robbery, MCL 750.529, and uttering counterfeit notes, MCL 750.253. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for each conviction, to be served concurrently. We affirm.

## I. BACKGROUND

Defendant's convictions stem from his attempt to buy a Sony PlayStation 5 (PS5) using fake money in a private sale coordinated online. The victim posted the PS5 for sale on Facebook Marketplace and received a message from "Samantha" offering to purchase the PS5 for $500. The parties arranged for the sale to take place at the victim's home in Lake Orion. When defendant arrived in his truck, the victim was surprised to see defendant—a then-37-year-old male—instead of "Samantha," but the victim chose to proceed with the sale because he needed the money.

The two attempted a hand-to-hand exchange through defendant's truck window— defendant handed the victim an envelope purportedly containing the agreed-upon $500, and the victim handed defendant the PS5. As part of this exchange, the victim made defendant show him the money, and when the victim felt it, he thought that the money felt fake. When the victim confronted defendant about this, defendant tried to pull the PS5 away from the victim and drive off. But the victim positioned himself on to the truck's running board, and when defendant began to drive, the victim grabbed the truck's steering wheel and turned the vehicle in the direction of a nearby tree, forcing defendant to stop the truck.

-1-

Defendant then reached toward the truck's center console and grabbed what the victim believed to be a handgun. Defendant pointed the gun at the victim and threatened to shoot him. The victim refused to relent, telling defendant that if defendant shot the victim, then both of their lives would be over. The two briefly continued struggling over the PS5 until defendant threw the PS5 out of the truck and drove away. The victim then called the police to report the incident.

The police obtained a search warrant for the Facebook records of "Samantha" and traced the account to defendant's street address. The police executed a search warrant at that address, and during the ensuing search, officers recovered two BB guns that resembled actual handguns and several stacks of fake money. When the officers spoke with defendant, he admitted to trying to buy a PS5 from a Facebook Marketplace seller using "prop money" and was arrested.

Defendant was convicted and sentenced as noted earlier. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges whether the evidence presented at his trial was sufficient to support his convictions. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Assessing whether evidence was sufficient to sustain a conviction requires viewing the evidence presented at trial in the light most favorable to the prosecution and asking whether, on the basis of that evidence, "a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. Viewing the evidence in the light most favorable to the prosecution includes drawing all reasonable inferences and making all credibility determinations in support of the jury's verdict. *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).

Defendant was convicted of armed robbery under MCL 750.529. A conviction of armed robbery under MCL 750.529 requires the prosecution to prove as follows:

> (1) the defendant, in the course of committing a larceny . . . used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (quotation marks and citation omitted).]

Acts taken "in the course of committing a larceny" include "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2). See also *People v Williams*, 288 Mich App 67, 75-76; 792 NW2d 384 (2010) ("Acts taken in the process of committing a larceny necessarily include steps or behaviors occurring at any point in the continuum, despite whether they are successfully completed.").

At defendant's trial, the prosecution presented evidence that defendant tried to rob the victim at gunpoint. The victim testified about how he arranged to sell the PS5 to "Samantha" for $500, and other evidence established that "Samantha" was a fake account set up by defendant, which explains why defendant arrived at the victim's home to complete the sale of the PS5. When he arrived, defendant, according to the victim, tried to pay for the PS5 using fake money, and when the victim rejected the fake money and tried to take back the console, defendant pulled out an apparent firearm and pointed it at the victim. Officers later executed a search warrant of defendant's home, where they found fake currency and two BB guns that resembled actual firearms. When defendant was interviewed by the police, he admitted that he "attempted to get a PS5" "[u]sing prop money." Viewing this evidence in the light most favorable to the prosecution, a rational juror could find beyond a reasonable doubt that, in the course of committing a larceny, defendant assaulted the victim by pointing what the victim reasonably believed to be a firearm at the victim. This is sufficient to prove that defendant committed an armed robbery regardless of whether defendant pointed an actual firearm at the victim or one of the BB guns resembling actual firearms that officers recovered. See MCL 750.529(1)(b). See also *People v Banks*, 454 Mich 469, 473; 563 NW2d 200 (1997) (explaining that a person commits an armed robbery if, during the course of a larceny, the person uses an item in a manner intended to induce a reasonable person to believe that the item is a dangerous weapon).

Defendant was also convicted of uttering counterfeit notes under MCL 750.253. To convict a defendant under MCL 750.253, the prosecution must prove that (1) the defendant tried to pass off fake money as actual money, (2) the defendant knew the money was fake, and (3) the defendant presented the fake money with an intent to defraud. See *People v Hall*, 391 Mich 175, 195; 215 NW2d 166 (1974) (explaining that the terms used in MCL 750.253 "may be defined as common currency or money, as that term is used today"). See also *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001) (identifying the three elements necessary to prove the analogous crime of uttering and publishing false or forged records or other instruments).

The evidence presented at defendant's trial as already recounted was plainly sufficient to establish that defendant tried to tender fake money as payment to the victim for the PS5. The evidence also established that defendant knew that the money was fake because he essentially admitted as much when he was interviewed by the police. And defendant's knowingly using fake money to "buy" the PS5 is certainly circumstantial evidence that defendant was using the fake money intending to defraud the victim. This is further buttressed by the victim's testimony that, when he confronted defendant about trying to pay for the PS5 with fake money, defendant tried to take the PS5 and drive away. Viewing this evidence in the light most favorable to the prosecution, a rational juror could find beyond a reasonable doubt that defendant knowingly used fake money to try to purchase the PS5 with the intent of defrauding the PS5's seller—the victim.

Defendant contends that the evidence presented at his trial was not sufficient to sustain his convictions because the victim's testimony alone was not enough to prove beyond a reasonable doubt that defendant committed the crimes for which he was convicted. It is well established, however, that a jury can convict a defendant based solely on a witness's testimony. See *People v Baskerville*, 333 Mich App 276, 283-284; 963 NW2d 620 (2020). See also *People v Koukol*, 262 Mich 529, 532–33; 247 NW 738 (1933). That aside, defendant admitted to an officer that he tried to buy a PS5 using "prop money," and other evidence corroborated the victim's testimony—when officers searched defendant's home, they found fake money and BB guns that resembled actual

-3-

firearms. There was also circumstantial evidence that defendant set up the sale intending to defraud the victim because defendant orchestrated the sale using a fake Facebook account. Defendant's convictions were therefore based on more than the victim's testimony alone.

To the extent that defendant attempts to challenge the sufficiency of the evidence supporting his convictions on grounds that the victim's testimony was not credible, that argument is misplaced. In reviewing a challenge to the sufficiency of the evidence, this Court does not interfere with the fact-finder's assessment of a witness's credibility. See *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016); *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). If a defendant seeks to challenge a conviction on grounds that a witness's testimony was incredible, then the defendant should do so by arguing that his or her conviction was against the great weight of the evidence. See *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998).

## III. DEFENDANT'S SENTENCE

Defendant next challenges his within-guidelines sentence on multiple grounds, arguing that the sentence is unreasonable, disproportionate, and cruel or unusual.

Within-guidelines sentences are reviewed for reasonableness. *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.). A review for reasonableness asks whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017). The abuse-of-discretion standard recognizes that there is a range of reasonable and principled outcomes, and the trial court's decision must fall within that range. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). The principle of proportionality requires that a sentence imposed be proportionate to the seriousness of the offense and the background of the offender. See *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). Taken together, this means that reviewing a sentence for reasonableness asks whether the imposed sentence falls within the range of reasonable and principled sentences that accurately reflects the seriousness of the offense and the background of the offender.

Following our Supreme Court's decision in *Posey*, a within-guidelines sentence is presumed proportionate, and the defendant bears the burden of overcoming this presumption. See *Posey*, 512 Mich at 357, 360 (Opinion by BOLDEN, J.). While the guidelines remain relevant, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661.

Defendant offers no argument to overcome the presumption that his within-guidelines sentence was proportionate and thus reasonable. He simply asserts that the sentence was unreasonable, disproportionate, and an abuse of discretion. Broad and unsupported assertions like these are simply not sufficient to overcome the presumption that a within-guidelines sentence was reasonable and proportionate.

The inadequacies of defendant's argument aside, defendant's within-guidelines sentence of 15 to 30 years' imprisonment was clearly reasonable and proportionate, and the trial court did not abuse its discretion by imposing it. As this Court has explained, "the guidelines embody the

principle of proportionality," *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017), by considering a defendant's background through the scoring of prior record variables (PRVs) and the circumstances of the defendant's offense through the scoring of offense variables (OVs). Defendant's PRV score of 95 shows that defendant's sentence reflected defendant's criminal background, like that he had already been convicted of a high-severity felony, see MCL 777.51; that he had been convicted of four or more low-severity felonies, see MCL 777.52; that he had seven or more misdemeanor convictions or misdemeanor juvenile adjudications, see MCL 777.55; and that he was on parole or probation, see MCL 777.56. Defendant's OV score of 45 shows that defendant's sentence also reflected the circumstances of his offense, such as the fact that defendant used a firearm and pointed it at the victim, see MCL 777.31; and that defendant engaged in predatory conduct by posing as "Samantha" to orchestrate the sale of the PS5 intending to victimize the seller, see MCL 777.40. When imposing defendant's sentence, the trial court took all of these things into account, more or less restating them on the record. On this record, and particularly in light of defendant's background and the circumstances surrounding the offenses for which he was convicted, we conclude that defendant's within-guidelines sentence of 15 to 30 years' imprisonment was reasonable and proportionate, and that the trial court did not abuse its discretion by imposing this sentence.[1] As for defendant's challenge to his sentence as cruel or unusual punishment, this Court has explained that "[a] proportionate sentence is not a cruel or unusual punishment." *People v Malone*, 348 Mich App 264, 276; 18 NW3d 18 (2023).

Affirmed.


/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

---

[1] Indeed, as the prosecution notes on appeal, defendant was convicted of armed robbery under MCL 750.529, which is a Class A offense, see MCL 777.16y, so with defendant's PRV score of 95 and his OV score of 45 (scores that defendant does not contest), his recommended sentencing range was 135 months to 225 months. This means that defendant's sentence of 15 years' imprisonment (180 months) was within the recommended sentencing range even before defendant's status as a fourth-offense habitual offender was considered (which increased the maximum minimum sentencing range to 450 months, see MCL 777.21(3)(c)).