PEOPLE v SANTANA

PEOPLE v WHITE

Docket Nos. 70235, 71641. Submitted April 17, 1984, at Detroit.—
Decided October 25, 1984.

Jose A. Santana and Leon C. White were convicted in a joint trial
of kidnapping, Wayne Circuit Court, Charles Kaufman, J. The
defendants each appealed and the appeals were consolidated.
Each defendant raised several issues on appeal. *Held:*

1. The prosecutor laid a proper foundation for presentation of

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses §§ 605-607.

Use or admissibility of prior inconsistent statements of witness as
substantive evidence of facts to which they relate in criminal case
—modern state cases. 30 ALR4th 414.

[2] 81 Am Jur 2d, Witnesses § 609.

Mode of proof of testimony given at former examination, hearing,
or trial. 11 ALR2d 30.

[3] 75 Am Jur 2d, Trial § 925.

[4] 75 Am Jur 2d, Trial §§ 277, 693.

Counsel's right in criminal prosecution to argue law or to read
lawbooks to jury. 67 ALR2d 245.

[5] 17 Am Jur 2d, Continuance § 3.

[6] 21A Am Jur 2d, Criminal Law § 911.

[7, 8] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

[8] 41 Am Jur 2d, Indictments and Informations §§ 153, 190.

81 Am Jur 2d, Witnesses § 2.

Power of court to make or permit amendment of indictment with
respect to allegations as to name, status, or description of persons
or organizations. 14 ALR3d 1358.

[9] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 20, 21.

6 Am Jur 2d, Assault and Battery §§ 13, 24, 25, 57.

21 Am Jur 2d, Criminal Law §§ 277, 279.

What constitutes offense of "sexual battery". 87 ALR3d 1250.

Seizure or detention for purpose of committing rape, robbery, or
similar offense as constituting separate crime of kidnapping. 17
ALR2d 1003.

[10] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 11.

[11] 75 Am Jur 2d, Trial §§ 17, 20.

[12] 5 Am Jur 2d, Appeal and Error § 772.

76 Am Jur 2d, Trial § 1080.

prior inconsistent statements attributed to defendant White. He was not required to call to the stand the witness to whom the statements were allegedly made because he did not seek to admit the written copy of the statement into evidence and simply allowed White's denial that he made the statements to go unrebutted. Although no prejudice resulted in this case, the better practice would be for the prosecutor to ask for the jury to be excused before presenting the statement to the witness.

2. The jury was properly instructed on the element of asportation. Further, the trial court's restriction of defense counsel's attempt to instruct the jury on asportation was proper.

3. The trial court did not abuse its discretion in denying defendant White's request for a continuance.

4. Defendant White was not prejudiced by his absence from the hearing at which his counsel requested a continuance.

5. The trial court did not err in allowing the late indorsement of the defendants' accomplice as a witness nor in granting the prosecutor's motion to strike the witness when the prosecutor later determined not to call the witness.

6. Defendant White's other allegations of error are without merit.

7. Defendant Santana's conviction of kidnapping on retrial, following his earlier conviction of assault with intent to commit criminal sexual conduct at a prior trial arising from the same criminal episode, did not violate the prohibition against double jeopardy because the offenses were different. Santana thus was not subjected to multiple punishments for the same offense.

8. Defendant Santana was not prejudiced, nor was he deprived of a fair trial, because of his being tried jointly with defendant White. Santana failed to move for a severance, and defendant White's testimony did not incriminate Santana on the kidnapping charge.

9. Defendant Santana's other allegations of error are without merit.

Affirmed.

1. WITNESSES — IMPEACHMENT — PRIOR INCONSISTENT STATEMENT.

A proper foundation must be laid by interrogating a witness as to the time and place at which the witness made a prior inconsistent statement and the person to whom it was made before using the prior inconsistent statement to impeach the witness.

2. WITNESSES — IMPEACHMENT — PRIOR INCONSISTENT STATEMENT.

Actual proof of a witness' prior inconsistent statement is required only where the impeaching party seeks to admit the statement

into evidence; it is proper, but not mandatory, for the impeaching party to call another witness to testify as to the statement denied by the witness (MRE 613[a]).

3. CRIMINAL LAW — JURY INSTRUCTIONS.

Jury instructions are to be read in their entirety and not taken out of context or considered in isolated segments.

4. CRIMINAL LAW — JURY INSTRUCTIONS — RESTRICTION OF COUNSEL.

It is the function of the trial court, not of counsel, to instruct the jury on the relevant law; where defense counsel is prohibited by the trial court from giving the jury a direct presentation of the law, counsel has not been unduly restricted by the court.

5. TRIAL — CONTINUANCE.

The grant or denial of a continuance is within the discretion of the trial court.

6. CRIMINAL LAW — DEFENDANT'S ABSENCE FROM HEARING.

Reversal of a defendant's conviction is not warranted because of the defendant's absence from a pretrial hearing where there is no reasonable possibility of prejudice arising from the defendant's absence.

7. WITNESSES — CRIMINAL LAW — INDORSEMENT OF WITNESSES.

The late indorsement of a witness is within the discretion of the trial court and will not be reversed absent an abuse of that discretion.

8. WITNESSES — CRIMINAL LAW — ACCOMPLICES.

A prosecutor must move to strike a witness' name from the information where the witness was indorsed as an accomplice and where the prosecutor ultimately decides not to call that witness.

9. KIDNAPPING — ASSAULT — DOUBLE JEOPARDY.

Assault with intent to commit criminal sexual conduct is not a lesser included offense of kidnapping and in the proper circumstances conviction of both offenses arising from a single criminal episode does not violate the prohibition against double jeopardy.

10. KIDNAPPING — ASPORTATION — LESSER CHARGED CRIMES.

The element of movement must be established in a kidnapping case where the movement has a significance independent of any lesser crimes charged and is not merely incidental to the commission of the lesser crimes.

11. CRIMINAL LAW — SEPARATE TRIAL — JOINT TRIAL.
   Generally, a defendant does not have a right to a separate trial; a
   defendant must make an affirmative showing, supported by an
   affidavit defining the inconsistencies between his defense and
   that of his codefendant, that his substantial rights will be
   prejudiced before he is entitled to a separate trial.

12. MOTIONS AND ORDERS — MISTRIAL — APPEAL.
   A trial court's denial of a motion for mistrial will not be reversed
   on appeal absent an affirmative showing of prejudice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Angela Palmieri,* for defendant Santana.

*Matthew Posner,* for defendant White.

Before: J. H. SHEPHERD, P.J., and BEASLEY and W. J. CAPRATHE,* JJ.

PER CURIAM. Defendants, Jose A. Santana and Leon C. White, and Edward Patrick were originally charged with kidnapping, criminal sexual conduct in the first degree, and armed robbery. Their first trial ended with a hung jury. Their second trial ended in defendant White's conviction for kidnapping and defendant Santana's conviction for kidnapping and assault with intent to commit criminal sexual conduct. The kidnapping convictions were reversed on appeal by this Court (Docket Nos. 52868, 53171. Decided July 9, 1982 [unreported]). Following their third joint trial, defendants White and Santana were both convicted of kidnapping. Defendant Santana was sentenced to a prison term of from 5 to 15 years and defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant White to a term of from 10 to 15 years. Charges against Edward Patrick were dismissed in exchange for his agreement to testify at trial, although the prosecutor did not ultimately call Patrick as a witness. Defendants White and Santana both appeal as of right.

Defendant White's principal argument on appeal is that his testimony was improperly impeached, essentially because the prosecutor failed to establish a foundation for statements attributed to him and used to impeach him. We disagree.

When attempting to impeach a witness with a prior inconsistent statement made by that witness, "a proper foundation must be laid by interrogating the witness as to the time and place of the statement and the person to whom it was alleged to have been made". *People v Claybon,* 124 Mich App 385, 399; 335 NW2d 493 (1983); MRE 613. Once a foundation is properly laid and the witness either admits or denies making the statement, the witness may be impeached by proof of that statement. *Claybon, supra.*

Defendant White relies on MRE 613 and this Court's decisions in *People v Lynn,* 91 Mich App 117; 283 NW2d 664 (1979), *aff'd sub nom People v Barker,* 411 Mich 291; 307 NW2d 61 (1981); *People v Martin,* 75 Mich App 6; 254 NW2d 628 (1977), *lv den* 402 Mich 881 (1978), and *People v Dozier,* 22 Mich App 528; 177 NW2d 694 (1970), *lv den* 383 Mich 826 (1970), for the proposition that once a witness denies a statement, the proof of that statement *must* be made through another witness. Although in the above cases this Court held that it was proper to call another witness to the stand to testify as to the statement denied by the first witness, this Court did not make this procedure mandatory. Furthermore, MRE 613 would appear to require actual proof of the statement itself only

where the impeaching party seeks to admit the statement into evidence.

MRE 613 provides as follows:

"(a) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by the witness, if written the statement must be shown to the witness and if oral, its substance and the time, place, and person to whom the statement was made must be disclosed to the witness, and on request must be shown or disclosed to opposing counsel.

"(b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2)."

In the instant case, the prosecutor initially showed defendant White a written copy or "transcript" of the alleged oral colloquy between White and a Canton police officer and read aloud some of the questions and answers contained therein:

"*Q. [Prosecutor]:* Mr. White, I'm going to ask you to read the last four questions in that document to yourself on page 13.

"*A. [Defendant White]:* Okay.

"*Q. [Prosecutor]:* I'm going to ask you, sir, whether or not you made these statements to the officer you spoke to, Lt. *[sic]* Stewart.

"*Q.* 'How did she get bloody?'

"*A.* 'I don't know.'

"*Q.* 'Leon. Leon.'

"*A.* 'I know Jose had my chuks [nunchaku, a wooden weapon used in Karate].'

* * *

"*Q. [Prosecutor]:* 'He hit her with your chuks?'

"*A.* 'Ah, ah, ah.'

"*Q.* 'With, with your chuks. And how did they get in her car?'

"*A.* 'Jose put them in there. They were in Jose's car. I had them wrapped in newspaper and when we got out of Jose's car, he had them in his hand. And all I remember is they were—I didn't even see them when they were in her car. I didn't even see them, but I heard the chains, though.' "

The prosecutor complied with the requirements of MRE 613(a). The written version of the statement was shown to White and he was informed of the substance, the time and place of the statement, and the identity of the person to whom the statements were allegedly made.[1] Although the prosecutor did not call to the stand the police officer identified as the taker of the statement, the prosecutor did not seek to admit the written copy of the statement into evidence under MRE 613(b). He was therefore not required to call the officer to the stand, as he complied with the foundational requirements for impeachment pursuant to MRE 613(a) and simply allowed White's denial that he made the statement to go unrebutted. The jury was free to take into account the prosecutor's failure to rebut White's denial. They were informed by the trial court that the statement itself was not proof that it was from an actual transcript if defendant White denied its accuracy, that it was not evidence, that evidence comes only from answers and not from questions. Furthermore, it is clear from the colloquy between the court and counsel in the presence of the jury that the court

---

[1] Defendant White denied making the statement. He testified at trial that the nunchaku were not his and that he did not hear the chains or sounds of violence from the back seat. He also denied seeing a pair of nunchaku the night the complainant was beaten and kidnapped.

was saying that, unless the defendant admitted the statement or unless the prosecutor brought in other proof that defendant White made the statement, the alleged statement had no evidentiary value at all. Apparently, all parties decided to do nothing further with the statement since it was not referred to again. We are satisfied that the requirements of MRE 613 were met and that there was no prejudice.[2]

Although none of the remaining issues raised by defendant White warrants reversal, we will discuss each briefly. Defendant White claims that the trial court improperly instructed the jury on the elements of kidnapping when it merely read the statute and failed to include the element of asportation in its preliminary, pre-proof instructions. It is clear, however, that the trial court did correctly instruct the jury on the asportation element at the close of proofs. The jury was therefore properly charged at the necessary time. Jury instructions are to be read in their entirety and not taken out of context or considered in isolated segments. *People v Dozier, supra; People v Benevides,* 71 Mich App 168; 247 NW2d 341 (1976). The trial court here charged the jury that asportation was a required element of kidnapping and that the

[2] MRE 613 does not require the prosecutor to first make inquiry about a prior inconsistent statement out of the presence of the jury. Had the prosecutor done so here, the entire issue would have been removed from this appeal. It is therefore better practice to ask the court to excuse the jury before presenting the prior statement to the witness. In the absence of the safeguards placed in this record by the Court, this conviction might easily have been reversed again. In the future, defense counsel would, therefore, be well advised to determine whether the prosecution intends to use statements allegedly made by the defendant and, if so, to file a motion *in limine* to determine, outside the presence of the jury, if the statement can be used. If the defendant admits making the statement, the jury will be premitted to hear about it. If the defendant denies making the statement, the prosecutor would have to decide to prove it by extrinsic evidence before the defendant could be confronted with it in the presence of the jury.

movement had to be independent of any other crime. *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973); *People v Barker,* 411 Mich 291; 307 NW2d 61 (1981). The jury was therefore properly instructed.

The trial court's allowance of the prosecutor's definition of kidnapping to the jury, which omitted the asportation element, despite White's urging to the contrary does not require reversal. First, defendant White did not object to the comments. Second, the trial court informed the jury during instructions that the prosecutor's definition of kidnapping was incomplete. Since any error was not objected to and was subsequently corrected, and since the jury was aware that it was the trial court's function to give instructions, which it did, we find no reversible error.

Defendant White next argues that the trial court erred in sustaining the prosecutor's objection to defense counsel's attempt to instruct the jury on asportation during closing argument. It is, however, the trial court's function to instruct the jury on relevant law, not counsels' responsibility. *People v Lambert,* 395 Mich 296, 304; 235 NW2d 338 (1975). Where defense counsel is prohibited by the trial court from giving a direct presentation of the law, counsel has not been unduly restricted by the court. *People v Giacalone,* 23 Mich App 163, 179; 178 NW2d 162 (1970), *lv den* 383 Mich 786 (1970). In the instant case, we find no error. Defense counsel was not precluded from stating the law as he interpreted it; he was merely prevented by the trial court from reading the applicable jury instructions to the jury. This restriction was well within the province of the trial court. MCL 768.29; MSA 28.1052.

Next, defendant White argues that the trial court erred in refusing a continuance so that

White could obtain copies of transcripts from previous trials. Defense counsel's initial motion for adjournment was denied by the circuit court chief judge. Subsequently, White himself requested a continuance from the trial court immediately before jury selection. This request was denied. We agree with the trial court that defendant had considerable time between trials to examine the transcripts. Although White stated that he had requested the transcripts three years earlier, he waited until the day trial was to begin before requesting a continuance. Furthermore, he did not assert that defense counsel did not have the transcripts during that time. Since defendant White was represented by counsel throughout trial, White's claimed vital need for a continuance in order to acquire the transcripts of previous trials is not apparent to this Court. Presumably defense counsel, who was charged with the duty of conducting White's defense, was familiar with the contents of those transcripts; we also presume he could have furnished them to White had he been asked.

The grant or denial of a continuance is within the discretion of the trial court. *People v Williams,* 386 Mich 565; 194 NW2d 337 (1972); *People v Gatewood,* 103 Mich App 763; 304 NW2d 3 (1981). Applying the criteria set forth in *Williams, supra,* and *People v Taylor,* 110 Mich App 823; 314 NW2d 498 (1981), we find that the trial court properly exercised its discretion in denying defendant White's request.

Defendant White next alleges that he was prejudiced by his absence from the first hearing at which his counsel requested a continuance. We find, however, that there was no "reasonable possibility of prejudice" arising from White's absence, and reversal is therefore unwarranted. *People v*

*Morgan,* 400 Mich 527, 536; 255 NW2d 603 (1977). White was represented by counsel at the hearing; he was subsequently allowed to make the same request for adjournment personally before the trial court. Furthermore, we have determined that defendant White was not entitled to a continuance or adjournment, the subject of the hearing White did not attend.

Defendant White next argues that the trial court breached its duty of impartiality through its unfair or negative conduct toward him. This argument is baseless.

Of course, a defendant's right to a fair and impartial trial by jury demands the display of impartiality on the part of the trial judge. *People v Cole,* 349 Mich 175, 200; 84 NW2d 711 (1957); *People v Neal,* 290 Mich 123; 287 NW 403 (1939). In the instant case, however, it was defendant White himself who disrupted the proceedings, argued with counsel, and introduced prejudicial matters. The trial court attempted to maintain control and was generally equitable and restrained in its dealing with defendant White. We will not allow White to manufacture error by virtue of his own disruptive courtroom behavior and subsequent distortion of the record on appeal.

Defendant White's claim that the prosecutor improperly and incorrectly implied that he had had two prior convictions rather than only one is also without merit. Any confusion resulting from the prosecutor's correct labelling of the crime White incorrectly named during cross-examination could have been eradicated upon redirect examination, as the trial court suggested to defense counsel. Counsel, however, chose not to subsequently clarify the matter. Furthermore, the jury heard counsel's objection and was therefore made aware

that defendant White claimed he had only one conviction.

Nor did the trial court err in granting the prosecutor's motion to endorse defendants' accomplice as a witness. Although defendants may have been surprised by the move, as the accomplice had previously been tried with defendants, they were not prejudiced by the endorsement nor did they request a continuance. They had at least four or five days following the endorsement in which to question the witness and were presumably familiar with his story through preparation for two previous trials. *People v Koukol,* 262 Mich 529; 247 NW 738 (1933), relied on by defendant White, is therefore not applicable.

The late endorsement of a witness is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *People v Powell,* 119 Mich App 47; 325 NW2d 620 (1982). In *People v Blue,* 255 Mich 675; 239 NW 361 (1931), the Supreme Court established the standard of review:

"The ultimate question, on review, is whether the trial court abused its discretion, with the burden ordinarily on the party asserting abuse. Want of excuse or bad faith in failing to promptly indorse names does not deprive the court of jurisdiction to permit indorsement but it casts upon the prosecution the burden of demonstrating that defendant will not be injured thereby and that the court is justified in granting the motion." *Id.,* p 678.

See also *People v Stewart,* 61 Mich App 167; 232 NW2d 347 (1975), *lv den* 395 Mich 793 (1975).

Defendant White has not shown that he was injured by the late endorsement. Since the witness was originally a codefendant, defense counsel knew that there existed the possibility that the

witness might have testified at a joint trial on his own behalf. It appears the endorsement of the accomplice was made after extended negotiations. In addition, defense counsel was afforded ample time to question the witness before trial. Most importantly, the prosecutor ultimately did not call the witness to testify. We therefore conclude that the trial court did not abuse its discretion and that no reversible error resulted.

Defendant White also contends on appeal that the trial court erred by granting the prosecutor's motion to strike the accomplice as a witness. This procedure, however, was proper in light of *People v Gawthrop,* 106 Mich App 722; 308 NW2d 621 (1981), *remanded on other grounds,* 417 Mich 983 (1983), which holds that "[s]hould the prosecutor not wish to call that witness, he must move to strike that witness' name from the information". *Gawthrop, supra,* p 728. This aspect of defendant White's argument is therefore also without merit.

Defendant White finally argues on appeal that rebuttal testimony by a prosecution witness was improper, as it was unrelated to matters testified to by defense witnesses. This argument is without merit. The rebuttal witness was called to counter testimony by a defense witness regarding statements given by the complainant about the number of vehicles being driven immediately after the initiation of the crime. Admission of testimony was therefore permissible at the discretion of the trial court. *People v Gonyea,* 126 Mich App 177, 186; 337 NW2d 325 (1983).

Defendant Santana raises three issues on apeal. As was the case with defendant White, none requires reversal.

First, defendant Santana argues that his conviction for kidnapping, following his earlier conviction for assault with intent to commit criminal

sexual conduct, violated the constitutional prohibition against double jeopardy. See *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980). We conclude, however, that in the instant case multiple punishments were not imposed for the same offense. *Jankowski, supra.* One offense was not a necessary or cognate lesser included offense of the other. *People v Wilder,* 411 Mich 328; 308 NW2d 112 (1981), *reh den* 411 Mich 1157 (1981).

The elements of assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g; MSA 28.788(7), include:

"(1) There must be an assault. (2) There must be a sexual purpose. When the act involves penetration, defendant must have intended an act involving some sexually improper intent or purpose. When the act involves contact, defendant must have intended to do the act for the purpose of sexual arousal or sexual gratification. (3) When the act involves penetration, the intended sexual act must have been one involving some actual entry of another person's genital or anal openings or some oral sexual act. When the act involves contact, defendant must have specifically intended to touch the complainant's genital area, groin, inner thigh, buttock, breast, or clothing covering those areas, or defendant must have specifically intended to have the complainant touch such area on him. (4) There must be some aggravating circumstances, *e.g.,* the use of force or coercion. An actual touching is not required. When the act involves penetration, it is not necessary to show that the sexual act was started or completed." *People v Snell,* 118 Mich App 750, 754-755; 325 NW2d 563 (1982), *lv den* 417 Mich 1032 (1983).

Defendant Santana was convicted in his second trial of kidnapping, MCL 750.349; MSA 28.581, which provides:

"Any person who wilfully, maliciously and without

lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, or shall forcibly carry or send such person out of this state, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, or in any way held to service against his will, shall be guilty of a felony * * *."

Case law mandates that the element of movement of the victim be established when movement has a significance independent of the lesser crimes charged. *People v Gwinn,* 111 Mich App 223; 314 NW2d 562 (1981), *lv den* 417 Mich 949 (1983). Movement cannot be merely incidental to the commission of another lesser crime, here, assault. *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973).

Here there was evidence showing that two separate criminal acts had been committed: the act of kidnapping and the act of assault with intent to commit criminal sexual conduct. The act of kidnapping was completed when defendants forced the complainant into her car and drove her away, refusing to allow her to leave. Subsequently, defendant Santana committed the second act by assaulting and forcing the complainant to engage in various sexual acts. Since the crimes here are both factually and legally distinguishable, defendant Santana's convictions of kidnapping and assault with intent to commit criminal sexual conduct are not barred by the prohibition against double jeopardy.

Defendant Santana next argues that he was prejudiced because he was tried jointly with defendant White. This claim is based primarily on the statements discussed previously which were alleg-

edly made by defendant White to police and which were used by the prosecutor in his attempt to impeach defendant White. In those statements, defendant White indicated that the weapon used in the assault had been in the possession of defendant Santana. We find *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), to be inapplicable. The statements in the instant case were not admitted into evidence. They could not therefore be called confessions by a codefendant and White denied making the statements. We therefore find that defendant Santana was not denied his constitutional right to confrontation by the prosecutor's mention of defendant White's alleged statements. *People v Coates,* 40 Mich App 212; 198 NW2d 837 (1972). Furthermore, in the instant case the trial judge told the jury that any such statements could not be used as evidence against defendant Santana.

Defendant Santana also contends that his joint trial with codefendant White deprived him of a fair trial. "Generally, a defendant does not have a right to a separate trial; joinder is usually within the discretion of the trial court." *People v Holly,* 129 Mich App 405, 409; 341 NW2d 823 (1983); MCL 768.5; MSA 28.1028. Because of the strong public policy favoring joint trials, a defendant must make an affirmative showing that his substantial rights will be prejudiced before he is entitled to a separate trial. *Holly, supra.* The showing of prejudice must be "supported by an affidavit defining the inconsistencies between the defenses of the parties". *Holly, supra,* p 410. A defendant is entitled to a severance when it appears that a codefendant will testify to exculpate himself at the expense of incriminating the defendant seeking a separate trial. *People v Hurst,* 396

Mich 1; 238 NW2d 6 (1976), *reh den* 396 Mich 976 (1976); *Holly, supra,* p 411.

Defendant Santana, however, did not move for severance. He asks that this Court infer such a motion from his objection on *Bruton* grounds and from defendant White's request for a separatate trial. Defendant Santana's counsel, however, did not join codefendant's motion for severance. Furthermore, the *Bruton* objection was made on the last day of a four-day trial. This would hardly be the time to move for severance since almost all of the testimony and evidence had been admitted. "Had defendant wanted a separate trial, he could have sought one upon motion." *People v Philson,* 19 Mich App 574, 575; 172 NW2d 829 (1969). Defendant Santana's failure to seek a separate trial precludes him from successfully raising this issue on appeal. *Philson, supra.* Furthermore, defendant White testified only that he saw no weapon and saw or heard nothing violent going on in the back seat as he was driving. His testimony did not incriminate defendant Santana on the kidnapping charge.

Defendant Santana also argues that defendant White's remarks concerning the number of trials had by defendants was so prejudicial to Santana that the trial court erred in denying Santana's motion for mistrial. We disagree.

A trial court's denial of a motion for mistrial will not be reversed on appeal absent an affirmative showing of prejudice. *People v Bradley,* 117 Mich App 776; 324 NW2d 499 (1982); *People v Jackson,* 100 Mich App 146; 298 NW2d 694 (1980).

In the instant case, the statements made by defendant White were directed solely to his own situation. He made no reference to defendant

Santana. We therefore conclude that the trial court did not abuse its discretion in denying defendant Santana's motion for mistrial.

Finally, defendant Santana complains of the instructions on kidnapping given by the trial court. As Santana did not object at trial to the instructions as given, and since we find that no miscarriage of justice will result from our refusal to review the trial court's basically correct instructions, we deem appellate review of this issue to be precluded. *People v Dozier, supra; People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969). Defendant Santana is therefore not entitled to reversal of his conviction.

Both defendants' convictions are affirmed.